571 So.2d 937 (1990)
FORD MOTOR CREDIT COMPANY
v.
STATE BANK & TRUST COMPANY and Carroll Fairchild.
No. 07-CA-59215.
Supreme Court of Mississippi.
November 28, 1990.
*938 Thomas W. Tyner, Hattiesburg, Michael Clayton Barefield, Aultman Tyner McNeese & Ruffin, Hattiesburg, for appellant.
Tommy B. Rogers, Collins, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
BLASS, Justice, for the Court:
Buffington Ford, Inc., was an auto dealership in Collins, Mississippi. Ford Motor Credit Company (FMCC) floor planned the dealership's inventory of new vehicles. There were two floor plan agreements between FMCC and Buffington. One is dated September 21, 1976, and the other August 9, 1984. It is stipulated, however, that FMCC did not floor plan any vehicles involved in this action, all of which were used, not new. Rather, State Bank & Trust financed the purchase of these vehicles. The Bank attempted to perfect its security interest by noting a lien on the certificates of title. They never filed a financing statement.
The relationship between FMCC and Buffington was uneventful until November of 1985. At that time FMCC discovered that Buffington had sold cars "out of trust," which means essentially that Buffington had sold them without paying FMCC. Then FMCC followed its normal procedure and, among other things, entered into a security agreement with Buffington which provided in pertinent part:
hereby grants unto Ford Motor Credit Company ... a security interest in the following types of property located at the undersigned's place(s) of business . .., now owned or hereafter acquired by the undersigned...: (a) All furniture, fixtures, machinery, supplies, and other equipment[.], (b) All motor vehicles, tractors, trailers, implements, service parts and accessories and other inventory of every kind [.], (c) All accounts, contract *939 rights, chattel paper and general intangibles.[1]
Buffington continued to operate but soon it became apparent that it would not be able to fulfill its obligations. As a result, FMCC repossessed all the vehicles it had floor planned. Later, FMCC sought Buffington's used vehicles that it did not floor plan but Buffington had already disbursed them to various locations, including Carroll Fairchild's Used Cars in Collins.
FMCC brought a replevin suit to recover the used vehicles. The complaint asked the trial court to replevy some of the used cars that Buffington had removed from its car dealership.[2] The lower court dismissed it with prejudice, holding that FMCC's security interest never attached to the used vehicles because there was no value given nor was there an agreement between the parties that a security interest attach. Further, the court held that First State Bank & Trust had the only attached security interest in the used vehicles. The plaintiff, FMCC, appeals.

ANALYSIS
A security interest attaches when: (1) there is an agreement; (2) value is given; and (3) the debtor has rights in the collateral. Miss. Code Ann. § 75-9-203(1)(a), (b) and (c) (Supp. 1990). As noted, the lower court held that FMCC gave no value for the security interest. While it is undisputed that FMCC did not provide Buffington with money to purchase the used cars this does not mean that FMCC did not give value.
Miss. Code Ann. § 75-1-201(44) (Supp. 1990) defines value as: "security for or in total or partial satisfaction of a pre-existing claim" or "any consideration sufficient to support a simple contract." Furthermore Mississippi case law has recognized that a security interest may be given for a pre-existing debt. Peoples Bank & Trust Co. v. Comfort Eng. Co., Inc., 408 So.2d 1190 (Miss. 1982). In that case, this Court noted that, "several parties have argued that a creditor does not give value if he takes a security interest to secure a pre-existing claim against the debtor. The courts have tossed these parties out on their ears, as well they ought. This section does not invalidate a security interest in after acquired property where a pre-existing claim is the value given ...". Id. at 1194 (quoting J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, § 23-4, at 792 (1972)) [hereinafter White & Summers].
In this case, FMCC entered into the security agreement with Buffington when it discovered that he had sold vehicles out of trust. The parties entered into the agreement so that Buffington might remain in business and repay the money that he already owed FMCC. This forbearance by FMCC falls squarely within the broad definition of value provided in Miss. Code Ann. § 75-1-201(44) (Supp. 1990). See, B. Clark, supra, at § 2.03 n. 114 and cases cited therein.
The existence of a signed writing describing the collateral is also a prerequisite to attachment. Miss. Code Ann. § 75-9-203(1)(a) (Supp. 1990). The lower court held that there was no evidence in the record establishing an agreement between FMCC and Buffington for a security interest to attach to the used vehicles. White and Summers break this requirement into three parts; "the writing must: (1) contain sufficient language to embody a `security agreement,' (2) include an adequate `description of the collateral,' and (3) be `signed by the debtor.'" White & Summers, supra, at 903 (2nd ed. 1980).
In this case there can be no doubt that the document contained sufficient language to serve as a security agreement or that *940 the document was signed by the debtor.[3] The lower court then must have decided that Buffington did not know or did not intend for the description of the collateral to include the used vehicles not floor planned by FMCC. There is no evidence in the record to support this belief. The parties entered into a security agreement on November 21, 1985. Among the items listed as collateral are, "[a]ll motor vehicles ... and other inventory of every kind.".[4]See, Boudreau v. Borg-Warner Acceptance Corp., 616 F.2d 1077 (9th Cir.1980) (a factually similar case that holds that "all inventory" is broad enough to cover vehicles not subject to a floor plan agreement.); See also, B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, § 10.05[3] (2nd ed. 1988).
Moreover, the description of the collateral was not ambiguous. Accordingly no parol evidence should be admitted. See, B. Clark, supra, at § 2.02[3][b]. Even if it had been permitted, there is no evidence in the record that Buffington did not believe that the security agreement covered the used cars. See also, Boudreau, supra, 616 F.2d at 1079. ("Ambiguity is not established merely by the fact that the parties disagree as to the meaning of the provision ... [n]or is an appellate court bound by a lower court's conclusions with respect to the existence of ambiguity"). Therefore, we hold that FMCC had an attached security interest in the vehicles.
The lower court's holding regarding State Bank & Trust's interest is not entirely clear. The court at least implied that the bank properly perfected its security interest under the Mississippi Motor Vehicle Title Law Miss. Code Ann. § 63-21-1 et seq. (Supp. 1990).
However, Miss. Code Ann. 75-9-302(3)(b) provides, in pertinent part:
(3) the filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to ...
(b) the following statutes of this state: sections 63-21-1 et seq., but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this chapter (part 4) apply to a security interest in that collateral created by a debtor ... (emphasis added)
Thus while State Bank & Trust had an attached purchase money security interest, it was not properly perfected because State Bank & Trust never filed a financing statement.[5]Louis & Diederich, Inc. v. Cambridge European Imports, Inc., 189 Cal. App.3d 1574, 234 Cal. Rptr. 889 (1987); Draper Bank and Trust Co., v. Lawson General Motors Acceptance Corp., 675 P.2d 1174 (Utah 1983). See also, 7 Uniform Commercial Code Case Digest § 9302.18 (Pike & Fischer, Inc., ed. 1984 & Supp. 1990) and cases cited therein.
As a result, FMCC had an attached and perfected security interest in the used vehicles. As against the bank's unperfected interest FMCC prevails and the decision of the lower court must be and is reversed and judgment rendered here.
REVERSED AND RENDERED.
*941 ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
DAN M. LEE, P.J., and ANDERSON, J., not participating.
NOTES
[1] In 1968, FMCC filed a financing statement covering, among other things, "new and used motor vehicles". Since that time, FMCC has duly filed continuation statements.
[2] FMCC also argues that its interest in these vehicles is superior to that of Carroll Fairchild. Fairchild argues that he has priority as a buyer in the ordinary course of business. See, Miss. Code Ann. § 75-9-307 (Supp. 1990). Since the lower court did not address this issue it is not before this court.
[3] The document is titled "Security Agreement" and while the signature is illegible, the parties have stipulated to the authenticity of the document.
[4] In its brief, FMCC also claims that the floor plan agreement of August 9, 1984 gives it a security interest in the used vehicles (See Addendum Exhibit F-1 & Appellant's br. 12). It is arguable that the 1984 agreement did not cover the used cars because it referred only to "merchandise". This point is moot because both the 1985 agreement, which definitely created such an interest, and the 1984 agreement would have the same priority date under the original financing statement.
[5] The appellee argues that its interest is perfected because of Miss. Code Ann. § 75-9-302(4). This argument is wholly without merit. Suffice it to say that the Mississippi Motor Vehicle Title Law does not apply here. Miss. Code Ann. § 63-21-41 (1972) says:

This chapter does not apply to or affect:
.....
(c) A security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale... .